Our next case for argument is 24-1509, BISSELL v. the ITC. Mr. Hawes, please proceed. Thank you, Your Honor. I may please the court. In its 150 years, BISSELL, an American company, has pioneered floor cleaning technology, such as the patents in this case. Oh my god, this is not a commercial. Move on to your legal arguments. After the ITC instituted the investigation into Tinoco's importing wet-dry vacuums, Tinoco altered their software to add two- and four-second positives that accomplished nothing real in the way of cleaning or charging. The claim construction issue was clearly in front of the ALJ at the time of the ID. Both Tinoco's experts during the hearing and BISSELL's pre-ID briefing described claim construction issues associated here. But the ALJ said there's no claim construction. But they confusingly turned to inventor testimony as extrinsic evidence, together with a portion of the specification that identifies one exemplary embodiment in the detailed description, to adopt a confining understanding of the clean-out cycle and apply that in order to say that the redesign, with its four-second and two-second charging time periods during pump-only action, would make it impossible to infringe even a comprising claim that identifies the clean-out cycle as an automated, unattended clean-out cycle. In other words, the type of claim language of this court has said, time and again, is open-ended. One or more is appropriate. Do you think there's a problem with the notion that the clean-out cycle has to perform at least some clean-out? No, Your Honor. As long as that is understood with regard to the specification and the findings of the ITC, which is that that does occur. And the specification says, as long as a portion is cleaned out. And the ITC made that finding. And that's not contested on appeal. That's not before us on appeal. I've turned the court to the appendix, page 231, which is where the ALJ, in the initial decision, determined that, and this is, it's helpful for context to look at 230. This is the portion of the claim language that says, to execute the unattended automatic clean-out cycle, the controller is configured to, and I'll wait for Your Honor to get there. I understand. No, go ahead. OK. So this is describing what is an automatic clean-out cycle. What's going on? And the second part of it, which is on the top of page 231, is that you power the vacuum motor by the battery after the brush roll motor and pump are powered, whereby cleaning liquid is extracted and deposited into the recovery tank, and a portion of the recovery pathway is flushed out. Was Dr. Sorensen your expert? Yes, Your Honor. Well, the commission below expressly found him not credible or persuasive when he testified the only requirement for a clean-out cycle were energizing the pumps, the brush roll motor, and the vacuum motor. They found that on, I guess, 12-684, various pages. The ID found that that extrinsic evidence was not credible. That's right, Your Honor. So our position is based on intrinsic evidence, specifically the summary of the patents, that lines up exactly with this finding on page 231, which is that a portion of the recovery pathway is flushed out. That's a finding that was not reviewed by the commission and is not challenged on appeal. And it lines up exactly with the language in the patents, which, if you turn with me to, I believe it's appendix to page 421, is the summary of the patents. Am I right on 420? No, 410. I'm sorry. Two pages off. So if you look at 410, which is in the brief summary, you'll see at lines 19 to 21, it refers to running an automatic clean-out cycle to self-clean at least a portion of the recovery pathway of the surface cleaning apparatus. We're asking this court to include, in the construction, an express description of what an automatic self-cleaning cycle can do, which is clean a portion. Don't we have to agree with you that a construction occurred here? I mean, I think your view is that, correct me if I'm wrong, is that the ITC engaged in a clean construction, whereas I think the other point of view is that the ITC may have fact-finding on infringement, right? I would agree that you have to find that claim construction occurred here. And I'll note that neither the commission nor Tenneco addressed the fact that the ALJ here used inventor testimony and the specification as part of the analysis of what corresponds to a clean-out cycle. That is not evidence that's used in the second step of infringement. You don't look to the inventor testimony or the specification when you're applying the claims. Yes, Your Honor? I thought we sometimes do that, in fact, when there is a unconstrued claim, say in the jury context, where the jury can't do construction. And so the jury is unavoidably presented with the question, when there's a term that might not have a unitary denotation, the jury has to decide, make a reasonable choice about what this seemingly capacious term would apply to. And you can look and see what the specification says as part of that, no? I don't believe so, Your Honor. I believe this court has said that you should instruct the jury to use the ordinary meaning to a person of skill in the art at the time. Generally, since Markman, the idea has been that only courts look at the specification. Only courts look at the legal documents in doing claim construction. Well, in doing claim construction. But in assessing infringement, you think that there is some legal impediment to the jury reading the specification to understand what the patentee suggested was within the scope of the claims? I mean, the jury, I don't think, is barred from doing that. But generally, the jury instructions don't instruct them to do that. And here, of course, the patent would have identified that a clean-out cycle could include just cleaning a portion. And that's exactly, this is a very narrow issue with regard to this appeal. Because it's only a. I just don't see this as an issue of claim construction. I see it as an issue of infringement. So why don't you, do you have an argument, is your entire argument hinged upon prevailing on this claim construction theory? Or do you alternatively argue that even if the plain and ordinary meaning is accepted and this is not part of claim construction, there's nonetheless a lack of substantial evidence? Your Honor, I would say that if this court agrees with the ALJ that this term requires a complete clean-out, despite the summary of the invention saying it can be partial, we would agree that that by itself as a matter of claim scope is a problem for us. You've used all your time. And have you also used his rebuttal time? Where did you set the timer at? Six minutes, Your Honor. So you didn't put his full time? No, we did the split time. The six minutes. OK. That's fine. Well, you're into your rebuttal time. I am, Your Honor. And I know I need to rebut two different arguments. So I will sit there. Good morning, Your Honor. And may it please the court. The court should affirm the commission's finding of no violation as to Tinoco's redesigned products in reverse as to the original products. I'm going to start by responding to my friend and his argument. I think he's said to you that if this wasn't claim construction, they don't have another argument.  That's what I think I heard. I don't want to misstate what I heard. But I think that's what he answered your questions with. And so I want to go immediately, Judge Toronto, to your questioning of my friend. You asked him about the, I believe you used the term, capacious understanding of the term when it is not construed. Your opinion for the corded fresh hub, which in turn cites another opinion that I believe you authored in Abbott versus Harmonic. Do you think that matters? I'm sorry? Do you think it matters? Do you think it matters that Judge Toronto authored it? Do you think that should have more persuasive value on me or him or anybody else? So what's the point? Chief Judge Moore, it is an opinion of the court. Correct. And that's why I said his opinion for the court. But here's the more important point that I want to get across here. The ALJ Cheney did not engage in claim construction. What he was doing was applying that line of precedence that says a reasonable understanding of the claim term is enough. And he said, and you can look at that. Can I ask you, he focused on clean out and also cycle. Right. Both of those things. Exactly. Exactly. And what he did at pages 207 and 208 of the appendix is he went through the arguments that my friends were making at that time. And he said, these are not reasonable arguments. Look at page 207. A cycle that does not do any cleaning, quote, cannot be correct. He's saying that's unreasonable. And that fits squarely within Fresh Hub, within AVID, even within the Ecofactor case that they've relied on. It is an unreasonable understanding of the claim term. The same thing with regard to cycle. And keep in mind also that this ALJ. Well, he also is looking at whether the accused product, whether the accused product, in fact, performs a clean out and whether it performs a cycle. Right? I think that's what he's focusing on. More than what the claim term means. And he further pointed out, Judge Stoll, that they had not, their expert, Dr. Sorenson, who as Chief Judge Moore properly pointed out earlier, was found not credible, said nothing about cleaning at all during the cycle that they asserted before the ALJ. And that's an important point also here. Because as we pointed out in our briefs, the position that my friend has been offering has been a moving target. The cycle before the ALJ was t from 0 to 20 seconds. Before the commission, that moved to 3.5 to 30 seconds, or 4 to 30 seconds. And now in this court, they're arguing that the relevant cycles are 35 to 55 seconds and 55 to 120 seconds. The ALJ took them at their word, took their infringement theory and said, that's unreasonable. Now, unless the court has further questions on their appeal, let me now turn to the related domestic industry issue here in this case. And it is related because, as we've shown in our briefs, Bissell did not put anything close to substantial evidence in to show that they satisfied the technical prong with regard to their products. There's a single colloquy with the aforementioned Dr. Sorenson. Dr. Sorenson said, you can see that in the source code. Did he show it to the judge? No, he didn't. Why didn't he do that? Is this just a gotcha on our part? It is not. The reason it's not a gotcha is they wanted to go right past this so that they did not have to say what the cycle was. Remember, up here on their appeal, they're constantly moving with regard to what they say is the relevant cycle. But if they did anything more than a conclusory statement, which this court, in cases like T2 Delta, Dominion Energy, which is a non-presidential decision, OSI, Intellectual Ventures, all of which we've cited in our briefs, say is not substantial evidence. There is nothing here that shows that they proved the existence of the domestic industry. But we have cases that say that expert testimony based on source code is substantial evidence, even when that source code itself is not admitted. So what's the problem? Well, the problem here is that all you have here is a reference to source code. If you look at the cases that they've cited, I think one was an Apple case. I don't remember off the top of my head the name of the other case that my friends have cited. Those go to the question of an expert testifying in some detail about source code. This is like the old pasta sauce commercial, Prego. Their expert says, it's in there. Don't worry, it's in there. But you all had a chance to review the source code. You could have cross-examined Dr. Sorenson on the source code. He relied on the source code itself. I'm sorry, but submitting the actual source code to the commission may not have been all that helpful to them. It might not have been. But an expert saying that the source code supports this when you've had an opportunity to both review the source code and cross-examine the expert. And how is it that you think the commission legally erred in being able to rely upon that under those circumstances? Because all the expert said is, it's in there. There was not any chart like we see with regard to the infringement products, where they show. I mean, it's in there. It's not that complicated. The source code contains this. Well, we don't. We don't. That is a key point. You put a cross-examination. Where in the source code is it? I mean, you didn't contest it in a way that makes me think the commission erred in relying upon it. Well, we absolutely said in our pre-hearing brief that it was their burden. This was not. We did not stipulate to this. But you didn't call out this particular issue, right? It was, again, this court has said, and my friends at the commission have cited in their brief, the Allick case, in which the domestic industry analysis is said to be virtually the same as an infringement analysis. This court would never accept such a single conclusory statement as substantial evidence to support. It's just one element, right? And this is an expert who relied. It's an expert who relied on something that wasn't provided. But someone who is an expert in reading source code and understanding source code testified that it was in there, right? And it wasn't contested at all. Do I understand that correctly? Well, it was absolutely contested. We said that that was not enough. There had to be some further explanation. But I mean, with his statement. But with. He was not a cross-examined lawyer, right? We did cross-examine him. We asked him whether he reviewed a computerized or a paper copy of the source code. But that was pretty much the limit of our cross-examination. But again, their burden to show that. Let me turn very quickly to the suction nozzle configured to extract fluid and debris. And here I'd like to point the court to the very last page of the appendix, which is appendix 31374. If it will help, I can hold it up here. It is titled Streaking Update. And I'm holding it up to you here if you want to take a look. There's a picture or a schematic of Bissell's product on the left and Tineco's product on the right. What you see here is an entirely different principle and application. The Tineco product has a blade, which scrapes off all of the stuff that is coming up as the roller is pushed forward. So there is not a suction nozzle configured to extract fluid and debris from the brush roll. The configuration here is only to extract it from the blade. And what is the proof that was offered against us? A disassembly of our product to remove the blade to show that if it were configured a different way, it might suck up fluid and debris. And that's not even substantial evidence that is responsive to this, by the way, construed claim term. This is not a case where the ALJ had no construction or the ALJ had said it's just mere capability. So it ended up that he was actually applying something close to a mere capability standard. And in my rebuttal time, I'll save what I've got left. OK. Very good. Thank you. How do I say your name, counsel? Lindy Herzbach. Ms. Herzbach. Please proceed. International Trade Commission. May it please the court. I'd like to start with Bissell's appeal, since I'll be addressing both arguments. And specifically, I agree that I think I've understood the court to say that this is a literal infringement issue. It's a fact issue. It's not a claim construction issue. So there's a few problems with Bissell's arguments. First, the commission contends that they've actually forfeited any claim construction argument. This was a case where they did not present any claim construction arguments. So the plain and ordinary meaning controls. It also is hard-pressed to understand how you would understand plain and ordinary meaning from the standpoint of a person of ordinary skill while ignoring the specification or ignoring other evidence in the record. So we believe, first, that the claim construction is forfeited. This court agrees. There's nothing further to their appeal. Second, we believe that the ALJ did not construe the claims as Bissell contends. So this was not limited to a single clean-out cycle. The ALJ did not require a full clean-out of any portion of the device. What happened is there has to be, first, the antecedent basis, an unattended automatic clean-out cycle. That has to be identified first. Bissell argued that four to 20 seconds was an unattended automatic clean-out cycle. The ALJ made a fact finding that it was not. And as further evidence that he did not construe this clean-out cycle as limited to only one, if he had, he could have stopped his analysis when the parties agreed that the full 120-second self-clean cycle was the clean-out cycle. That's not what he did. But on this record, there is only one period of time that was identified and that the ALJ found to be an unattended automatic clean-out cycle. And the main reason for that finding was the lack of credibility for Bissell's expert and the fact that Bissell's expert, when dealing with this four to 20-second time period, completely ignored whether any dirt is cleaned out from the device. Now, Bissell's confusing the cleaning a portion of the machine, a physical distance, versus an amount of dirt. So there's a difference here. What the ALJ found is that there is no amount of dirt that was shown to be removed during Bissell's time periods. So for example, if you look at the four to 20 seconds, the vacuum motor doesn't even turn on in those 20 seconds. So removal's hard to see. There's more than substantial evidence here to support the ALJ's finding that one, four to 20 seconds was not an unattended automatic clean-out cycle, because it did not show any clean-out of dirt from the machine. And two, if we're left then with the 120-second full clean cycle, it's undisputed that redesigned products charge twice during that cycle. They cannot meet the claim limitation, but the charging is disabled and remains disabled. If there are no questions regarding Bissell's appeal, I'd like to turn to Tyneco's issues. So Tyneco raises an issue with the commission's technical prong findings and infringement findings regarding the suction nozzle. Tyneco's, Tyneco, sorry, is actually asking this court to re-weigh the evidentiary record and to ignore, instead of deferring to the ALJ's credibility determinations. So we turn to technical prong. For background, the technical prong considers whether the articles practice the patents. So it's similar to an infringement issue. I'd like to actually direct the court to. Let's just get to the chase here. There's too much build-up. Their argument is Dr. Sorensen's testimony should not have sufficed as substantial evidence, because he made, at best, a passing reference. It's in there, and didn't identify where, didn't give specifics, didn't. And so the question is, do you think that's necessary? Was his testimony so conclusory that it should not have sufficed as substantial evidence? That's what their entire argument here boils down to. So if I could direct the court, actually, to APPX 323. So APPX 323 is the page of the initial determination where the ALJ analyzes this term that we're talking about. I think it's best if we look at what the ALJ actually did. So when we're looking at this page, the ALJ first considers all of Bissell's arguments and evidence. Then he also references Tinoco's responsive brief. But then he goes through and also cites Dr. Sorensen's specific testimony regarding the source code. At the end of this analysis, he states, in view of the foregoing evidence, there's just far more here than just an expert testimony as well. So there's two problems with Tinoco's argument. One, there is other evidence in the record that supports the finding that Bissell's domestic industry products meet this limitation. And even if we ignore that evidence, which we're not to do under a substantial evidence review, we look at the record as a whole. So we look at this other evidence. Then we also have the source code testimony. Dr. Sorensen, he was qualified. He testified. He reviewed the source code. And the ALJ considered him to be persuasive. And lastly, I'd just point out again that Tinoco never substantively disputed that this limitation was met. So when you have the source code testimony by a qualified expert, you have Bissell's evidence, which also includes, I would point just for to clear any confusion, this JX41 at 10 that's cited here in the first paragraph. That actually is the Bissell user guide that's also in the record. I think the response would be that the only evidence that's presented about disabling during the clean-out cycle is Dr. Sorensen's testimony. The other testimony isn't about that feature, I think. But tell me if I'm wrong. The JX41 I just cited to you, that appears in the joint appendix as APPX 26545. And that is a Bissell user manual that explicitly states the charging disabled during the cycle. Sorry, I missed that. No, it's OK. I just wanted to make sure we had the site. Thank you, Your Honor. So in our view, more than substantial evidence supports the commission's finding here that Bissell did meet its technical problems. If there are no other questions, I'd like to turn to the suction nozzle issue. So here, there is substantial evidence that supports the ALJ's finding that even if this metal blade helps to extract dirt and debris, it's not the sole way that dirt and debris is removed from the brush roll. So we have both experts' testimony that if you apply the claim to the section where it configured to extract fluid and debris means the components are arranged to extract. If there's suction that is arranged to extract, then throughout this investigation, extract and suction were used interchangeably to mean the same thing. So if it's arranged such that the suction can remove any dirt and debris from the brush roll, there doesn't have to be all of it removed by the suction. It can be helped. We can add other components to it, and it can still infringe. The ALJ made a specific finding that Can I just ask on this? I guess it relates in part to this and in part to the previous argument. Was there clarification of the relationship between cleaning and extraction slash suction? Assuming extraction and suction are the same, you said something in the first part of the argument about how when the pump is on and the roller brush is going around, there might have been or might not have been, I think is your point, cleaning because the dirt is not being suctioned out. So maybe it's just floating around or something after being somewhat detached from the bristles. So if I could just ask a clarifying question and make sure I answer your question correctly. I'm not sure I'm getting the answer, but go ahead. I believe before we were talking about the self-clean cycle, when the machine is docked and it's actually being cleaned with fresh water, and then the dirty water goes into a dirty tank to be emptied by the user. Here, I believe we're talking about it more in operation. So if we're actually running the surface cleaning device on the floor to be clean, it's going to use the pump, the motor, the vacuum differently than it may during the self-clean cycle. So if we're talking about the removal of dirt while we're actually using it to clean a surface, I think that's a slightly different issue. I also think that whether there is, to go back to the self-clean cycle, it was Bissell's burden to prove that any dirt or debris was removed during the self-clean cycle. And they've identified this very small period of time, but they didn't show any dirt or debris removed during that time. So if we then switch back to the time code issues, I'm sorry, I know this is confusing, that relates to the infringement more the operation of the self-cleaning device, is my understanding. So when the suction nozzle is arranged such that suction can travel to remove dirt or debris from the brush roll, that satisfies the plan. You're saying during operation while it's actually cleaning a carpet, as opposed to when it's sitting there in a self-cleaning mode. Exactly, that there would be a slight change. Of cleaning itself, as opposed to cleaning the carpet. Yes, Your Honor. Thank you, Your Honor. If there are no further questions, I'm happy to see the rest of my time. Thank you very much. Go straight to the question of whether claim interpretation occurred. Tenneco's expert during the hearing, and I would point the court to page 13,264. This is line 11. Question to Tenneco's expert. And is the interpretation you just gave consistent with the specification of the patents? Answer, yes it is. The next page, 13,265. Again, line 11. Do the specification of the patents support your opinion about the meaning of the clean-out cycle that you just talked about? Answer, yes they do. At the hearing, Tenneco said, here is a construction of clean-out cycle. And by the way, the specification of the patents support it. So what happens after the hearing? Not surprisingly, Bissell is very clear that the issue here is a claim construction issue. At appendix page 13,906, we say Tenneco is importing limitations not recited by the claim. At the second to the bottom of that same page, Tenneco's definition of clean-out cycle finds no support in the claims or the specification. On the next page, 13. One of the things I'm finding a little challenging about this is that when neither party proposes a construction, which is what happened here, you didn't propose a construction. It's the plain, ordinary meaning. Do you think that that impedes or prevents the expert from then giving testimony when they're saying there is infringement from explaining what the plain and ordinary meaning is? Do you think that that is something the expert can't do? How is the jury supposed to divine what the plain and ordinary meaning is to a skilled artisan, which a jury is not? So Your Honor, first of all, I would say plain and ordinary meaning, not a problem. And this takes me back to a question Judge Toronto asked about going to the specification. And Judge Toronto, in our brief, we actually did address that point in the casing question. Get back to the microphone. It is Catalina Lighting. We cited it on page 28, which says that the, quoting, infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to figures of the asserted patent. So we're not supposed to be going to the specification. And their expert admits that's what he's doing. What do you mean? I don't agree. We're not supposed to be going to the specification. That doesn't make sense. For a jury to try to figure out what is what, you didn't offer a construction. You could have offered a construction. You didn't. Respectfully, Your Honor, we did. We said it was defined by the claims, which was that language I pointed to. If you look at page 230 and 231, it says an automatic clean-out cycle includes and gives the specific operation of the pump, the vacuum motor, and the brush roll motor. That defines what it is. And the findings on page 230 and 231, which are uncontested on appeal, is that Tenneco's products, both original and redesigned, do that. And during the time they're doing that, there's no recharging. We've exceeded your time. Thank you, Mr. Hall and Mr. Kastanis. Very quick, I hope. As to domestic industry, my friend at the commission says, well, look at other evidence that was cited when the ALJ was reciting the party's contentions. This is a very experienced ALJ. He was reciting contentions. He was not making reasoned decision-making or meaningful engagement with this. The only evidence he relied on was that single question and answer with Dr. Sorensen. Judge Stoll, you asked my friend about JX41 appendix 26545. That only goes to one, by the way, of the two domestic industry devices. There is not anything in the record showing the same thing with regard to the second domestic industry device, and the ALJ didn't engage that at all. And finally, the commission said that Dr. Sorensen was found persuasive. He was found specifically not credible. On the configured point, the one thing I want to leave you with is that our products are fundamentally different. We have a very thick brush rule that requires that blade to remove things from the brush rule. Thank you for your time. Thank you, Mr. Extaneous. I thank all the lawyers whose cases taken under submission.